**STERLING DRUG Inc., Plaintiff,**

v.

**Robert C. WATSON, Commissioner of Patents, Defendant.**

**Civ. A. No. 2045-53.**

United States District Court
District of Columbia.

Nov. 2, 1955.

**174**

Dean Laurence, Jackson, Miss., John S. Roberts, Jr., and Laurence, Vander-Kelen & Miller, Washington, D. C., for plaintiff.

E. L. Reynolds, Sol., J. Schimmel, Washington, D. C., for defendant.

MORRIS, District Judge.

This is a proceeding in which the plaintiff, as assignee of application for patent by Benjamin F. Tullar, Serial Number 782,012, filed October 24, 1947, pursuant to Title 35 U.S.C. § 145 (formerly Section 4915 Revised Statutes), seeks a determination that it is entitled to letters patent on the claims here in issue, and a decree authorizing the defendant to issue such letters patent.

The claims set forth in the complaint are 6 to 15, inclusive. However, only claims 10, 12 and 14 are really in issue, as the other claims were rejected on the sole ground that they were directed to nonelected species, and there is no disagreement between the parties that only claims 10, 12 and 14 are here to be considered on their merits. Such claims are as follows:

"Claim 10. A substance selected from the group consisting of d-arterenol, l-arterenol, and their acid addition salts, said substance being in crystalline and substantially pure form and being substantially free from its optical antipode."

"Claim 12. An acid addition salt of l-arterenol, said salt being in crystalline and substantially pure form and being substantially free from its optical antipode."

"Claim 14. l-arterenol acid d-tartrate in crystalline and substan-

tially pure form and substantially free from d-arterenol acid d-tartrate."

Claim 10 of the Tullar application relates to four different substances: l-arterenol, d-arterenol, the acid addition salts of l-arterenol, and the acid addition salts of d-arterenol. There are three material limitations set out in the claim: Each substance must be (a) in crystalline form (b) substantially pure and (c) substantially free from its optical antipode. Claim 12, which is subgeneric to claim 10, calls for an acid addition salt of l-arterenol with the same three limitations above stated. Claim 14 is a claim to one particular specie of claim 12, l-arterenol acid d-tartrate, with the said three limitations. This claim covers the material used in preparing the pharmaceutical preparation marketed by plaintiff as Levophed.

There is no controversy that the compound arterenol is old, but the controversy here revolves around the contention that Tullar is entitled to the claims here made by virtue of first producing the racemic compound in such way as to produce a mixture of diatereo-isomeric salts, which are separated by fractional crystallization and then releasing each of the desired isomers, i. e., dextro-arterenol and levo-arterenol from the separated salts. The testimony had at the hearing in this case was detailed and voluminous. It dealt at length with the repeated efforts which had been made to secure a resolution of the compound dl-arterenol so as to produce d-arterenol and l-arterenol. (The distinction between the latter two is that the crystals of d-arterenol turn polarized light to the right, while the crystals of l-arterenol turn such polarized light to the left.) It was clearly established that dl-arterenol is not simply a mixture of the two subsequently produced component compounds, but is a compound in which the two are so united in molecular structure that it defied resolution until it was accomplished by the applicant Tullar. Much of the testimony concerning efforts to secure such resolution was ob-

jected to by the defendant on the ground of hearsay, but the evidence given which was not hearsay was ample to support the conclusion that for a long period of time no resolution of the old compound was effected until it was accomplished by the applicant.

The bases of rejection of the claims here involved by the Board of Appeals in the Patent Office are primarily the lack of invention in its optically active isomers over dl-arterenol, coupled with references showing that some other racemic mixtures had been resolved into their optically active isomeric components. This conclusion is stated as follows:

"We are of the opinion, however, that claims 10, 12 and 14 lack invention over Stolz et al. The Examiner points out that the Karrer textbook, in the third paragraph, page 91, discloses that racemic mixtures break down in solution into their optically active isomers, and since Stolz et al. disclose salts of arterenol in solution each optical isomer must have existed in said solution as an entity in itself. In view of the known fact, evidenced by Gruttefien, British patent 3,021, British patent 396,951 and Austrian patent 64,796 that racemic mixtures may be resolved into their optically active isomeric components, we are of the view that appellant's isolated optical isomeric compounds are not patentable."

The Board of Appeals further rejected said claims for lack of invention over the known next adjacent homologues of the claimed substances, agreeing with the Examiner that, in view of

"the doctrine of In re Hass et al., 563 OG 3 and 563 OG 579 and In re Jones 1947 CD 502 to the effect that unless a verified showing is made that the claimed compounds possess unexpected or unobvious beneficial properties not possessed by the homologous (or isomeric) compound of the prior art, and which properties differ in kind from the properties of the prior art compound, the claimed compounds do not in-

volve invention over the prior art compound * * *."

At the hearing in this case a further ground for rejection was asserted against the patentability of the claims here involved in so far as such claims related to crystalline l-arterenol free from the d-isomer in that there exists in the human body l-arterenol in some form and, therefore, such substance is not patentable.

The questions involved here are purely questions of fact. The evidence at the hearing abundantly supports the contention of the plaintiff that l-arterenol in the form here claimed has phenominal therapeutic properties with respect to the treatment of irreversible shock and coronary occlusion. The effect of the use of l-arterenol, free of d-arterenol or other homologues, is to raise the blood pressure of a person suffering from irreversible shock, by constricting the blood vessels rather than increasing the rapidity of the heart beat, to a point where successful surgery can be accomplished. This constriction of the blood vessels, without increasing the rate of the heart action, is the primary value that l-arterenol has in the treatment of coronary occlusion in that it affords the heart, during its period of rest, the opportunity to absorb the blood which it needs for its own functioning. These qualities are utterly unattainable either by the dl-compound, from which the pure l-arterenol is derived, or the admixture of l-arterenol with its homologues. In the latter case the efficacy is not only lost, but deleterious results follow. It appears from the evidence in this case to be beyond question that the use of l-arterenol in the treatment above alluded to has in the short span of a few years saved the lives of well over a hundred thousand persons. It is urged in opposition that certain homologues have some effect in raising the blood pressure and, therefore, the claim here made is simply one of degree, but there is a vast amount of difference between the therapeutic value of something that will so control the blood pressure that

successful surgery can be accomplished and something else that falls so far short of doing so that the patient dies. And there can hardly be any serious question that these beneficial characteristics were both unexpected and unobvious, which is the test to be applied in the matter of the patentability of a compound that is a homologue of another.

The argument that l-arterenol exists in the human body in certain glands in combination with other compounds and, therefore, is not patentable ignores the fact that it has no therapeutic value unless isolated and available in its pure form, and no compound of this kind has been derived from natural sources, except as it was accomplished by the seeding with crystals from the compound here claimed. It matters not that l-arterenol in some form in combination may exist in nature, if it cannot be reduced to a form in which it can be used. It is this product which has been so reduced or resolved that it can be used that is here claimed.

I have no hesitancy in reaching the firm conclusion that the l-arterenol, as set forth in claim 10, and the acid salt of l-arterenol in claim 12 and the l-arterenol acid d-tartrate, as set forth in claim 14, are patentable. There is a difficulty with respect to claim 10, and that is that it also includes the claim to d-arterenol, and there has been no showing of any beneficial unexpected and unobvious properties of d-arterenol, and I, therefore, cannot conclude that d-arterenol is patentable. In view of this inclusion of d-arterenol in claim 10, it is agreed by counsel for the respective parties that the plaintiff will dismiss this action in so far as it relates to claim 10 for the purpose of an administrative determination in accordance with the conclusions here reached with respect to l-arterenol. In this view, the relief sought by plaintiff with respect to claims 12 and 14 will be allowed, and the complaint will be dismissed as to claim 10 for the purpose of administrative handling as agreed to by counsel.

Counsel will prepare appropriate findings of fact, conclusions of law and order in accordance with this memorandum opinion.